1
2
3
4
5
6               IN THE UNITED STATES DISTRICT COURT
7
8               FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
LAVON HILL, JR,
10
        Plaintiff,                          No. C 09-00235 JSW
11
    v.
12
BAYER HEALTHCARE LLC and DOES 1-           **ORDER GRANTING**
20,                                        **DEFENDANT'S MOTION FOR**
13                                          **SUMMARY JUDGMENT**
        Defendants.
14
_____/
15
16          Now before the Court is the motion for summary judgment filed by Defendant Bayer

17  Healthcare LLC ("Bayer").  Having carefully considered the parties' arguments, the relevant

18  legal authority, the Court hereby GRANTS Defendant's motion for summary judgment.

19                            **BACKGROUND**

20          Plaintiff brings suit against Bayer alleging disability discrimination, failure to provide

21  reasonable accommodations and failure to engage in interactive process, all in violation of

22  California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940(a), *et. seq.*

23  Plaintiff also alleges wrongful termination and/or failure to hire in violation of public policy.

24          The main pharmaceutical product manufactured at Bayer's Berkeley facility is Kogenate

25  FS, a clotting agent principally used by hemophiliacs to help clot their blood.  (*See* Declaration

26  of David Willis ("Willis Decl.") at ¶ 2.)  Bayer must follow rigorous internal operating

27  procedures as well as follow the mandates of Federal Regulations designed to ensure the safe

28  manufacture of its pharmaceutical products.  (*See id.* at ¶ 3.)  Because the product must be safe

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    for human use, the manufacturing process requires that certain production steps be conducted in

2    "clean room" or aseptic environments which are regulated by ultra-strict parameters.  (*See id.*)

3          Plaintiff was employed by Bayer as an Aseptic Processing Technician Filling Operator

4    in Bayer's Berkeley facility beginning in February 2005.  (*See* Declaration of Jerome

5    Schreibstein ("Schreibstein Decl."), Ex. A (deposition of Lavon Hill, Jr.) at 11:8-14, Ex. 1.)

6    Plaintiff worked in the Filling and Freeze Drying ("FFD") aseptic area in building 49A as a line

7    worker.  One of the requirements for this position is that the filling operator must "be able to

8    qualify for plant aseptic gowning requirements ... be able to remove makeup, rings, watches and

9    all other jewelry as required for entry in specific cleanliness classification[s]," and "be able to

10   gown and work in a variety of clean room environments for long periods of time..."  (*See*

11   Declaration of John Mentz ("Mentz Decl."), at ¶ 2, Ex. A at 2; *see also* Schreibstein Decl., Ex.

12   A at 17:14-19:16, Ex. 3 at 2.)  In addition, the position required that the operator be able to

13   perform (a) simple grasping with both hands, 2-4 hours a day, (b) power grasping with both

14   hands, 1/2 to 2 hours per day, (c) pushing/pulling with both hands for 2-4 hours per day, (d)

15   lifting 26 to 50 pounds, 1/2 to 2 hours per day, and (e) lifting 51-75 pounds for 1/2 to 2 hours

16   per day.  (*See* Mentz Decl. at ¶ 2, Ex. B at 2; *see also* Schreibstein Decl., Ex. A at 55:5-57:12,

17   61:25-62:14, 64:6-10, Ex. 7.)

18         In addition, all operators entering into any of the aseptic areas were subject to Bayer's

19   extensive and documented Standard Operating Procedures ("SOPs") involving procedures for

20   wearing protective equipment over all parts of the body, including wearing two sets of

21   protective gloves, surgical scrubs and a body suit.  (*See* Declaration of Christopher Burns

22   ("Burns Decl."), at ¶ 2, Ex. A.)  The SOPs, dictated by governing regulations for

23   pharmaceutical production by the Food and Drug Administration ("FDA"), prohibited the

24   wearing of any item on the hand or wrist area with the exception of a smooth wedding band.

25   (*See id.* at ¶ 4, Exs. A-C; *see also* Schreibstein Decl., Ex. A at 22:23-23:25.)  The reason that all

26   items must be removed prior to entry into the production areas is that the items might trap or

27   retain microbial contaminants, posing and incrementally greater risk to the product.  (*See* Burns

28   Decl. at ¶ 4.)  In addition, items worn on the wrist or hands, such as jewelry, watches or other

devices may pose a risk of perforating the protective gloves or other parts of the workers' protective equipment.  (*Id.*)  From an aseptic processing standpoint, the areas in which Plaintiff spent the majority of his time working are the most highly regulated areas due to the concern of contamination of Bayer's final product.  (*Id.* at ¶ 5; Willis Decl. at ¶ 5; Schreibstein Decl., Ex. A at 57:17-60:5.)

On December 5, 2006, Plaintiff was issued a verbal warning for failure to follow strict procedures of the clean-room environment.  (*See* Schreibstein Decl., Ex. A at 67:1-6:8, Ex. 12.)  On January 8, 2007, Plaintiff was issued a written warning for violating gowning procedures and, having found fecal matter on his gowning, was disqualified from re-entering the highly aseptic areas at that time, effective until at least February 20, 2007.  (*See id.* at 70:16-74:15, Ex. 15.)

In January 2007, Plaintiff claimed to suffer a workplace injury involving pain in his right hand and wrist.  Although he had endured the pain for some time, he did not report believing it to be a temporary strain.  (*See id.* at 75:22-77:24.)  Plaintiff complained that the pain was caused by performing his job duties, such as pushing, pulling, and lifting, as well as pinching forceps.  (*Id.* at 77:5-78:3.)  Plaintiff complained of pain from flexing, grasping, pinching forceps, twisting clamps, pulling levers, and pushing and pulling carts on his own.  (*Id.* at 79:5-80:14.)  About the time he was disqualified from working in the highly restrictive areas, Plaintiff was prescribed the use of a wrist brace as a workplace medical restriction, and wore the brace although he never disclosed it to any of his supervisors.  (*See id.* at 86:23-25.)  Although he was provided modified work duties as an accommodation to Plaintiff, Plaintiff's supervisor was not aware that he was wearing a brace.  (*See* Mentz Decl. at ¶ 5.)

In April 2007, after experiencing a flare up of the injury, Plaintiff was referred to a hand surgeon and complained that he was experiencing pain almost constantly at work.  (*See* Schreibstein Decl., Ex. A at 98:6-99:5, 104:7-10.)  In June 2007, Plaintiff's condition had worsened to the point where he was precluded from using his right hand at work.  (*See id.* at 120:11-17.)  Plaintiff's treating physician, Dr. Douglas Chin, concluded that as of July 2007, Plaintiff had suffered "significant trauma to the right wrist that would result in permanent

United States District Court

For the Northern District of California

3

**United States District Court**
For the Northern District of California

1   disability and deformity" and advised Plaintiff that "following injuries of this type, the injured

2   adult is not likely to ever gain full sensibility, form or function and that some level of

3   permanent deformity or disability should be anticipated." (*See* Schreibstein Decl., Ex. B

4   (deposition of Dr. Chin), at 13:11-17:14, Ex. 1 at 42-50.)

5       On January 30, 2008, Dr. Chin examined Plaintiff and concluded that he was

6   immediately and permanently restricted from:

7       a. repetitive or sustained pinching with the right thumb
        b. frequent or sustained weightbearing upon the right hand
8       c. lifting greater than 10 pounds' weight with the unassisted right hand
        d. lifting greater than 25 pounds' weight using both hands together

9

10  (*See* Declaration of James J. Achermann in support of opposition ("Achermann Decl."), Ex. G

11  at 106.)  At that same time, Dr. Chin concluded that "the physical demands of [Plaintiff's] usual

12  and customary duties appear to fall within the scope of the prescribed work restrictions and

13  preclusions." (*Id.* at 107.)  The doctor also found that Plaintiff should wear a "right thumb

14  CMC splint." (*Id.* at 108.)  Plaintiff was aware of these permanent restrictions.

15  (*See* Schreibstein Decl., Ex. B at 30:22-31:10, 32:3-33:3, Ex. 1 at 22-23.)

16      The permanent restrictions recommended by Plaintiff's treating physician, specifically

17  requiring that Plaintiff wear a wrist brace, were facially violative of Bayer's SOP precluding the

18  wearing of items on the hands or wrist, other than a smooth wedding band. (*See* Burns Decl. at

19  ¶ 6.)  The Bayer personnel determined that the wrist brace device required by Plaintiff's doctor

20  would increase the risk of microbial contamination in the aseptic areas of the facility, and could

21  pose significant compliance issues for the company. (*See id.*)  In addition, Plaintiff's supervisor

22  determined that the permanent orthopedic restrictions – against repetitive or sustained pinching

23  with the right thumb, frequent or sustained weight bearing upon the right hand, lifting of greater

24  than 10 pounds unassisted with the right hand, and lifting greater than 25 pounds using both

25  hands together – could not be accommodated given the demands and essential functions of the

26  filler position. (*See* Mentz Decl. at ¶ 7.)  Plaintiff agreed that the restriction on repetitive or

27  sustained pinching of the right thumb would preclude him from using forceps as part of the fill

28  process, one of the essential functions of his filler position. (*See* Schreibstein Decl., Ex. A at

    134:10-20.)

4

United States District Court

For the Northern District of California

1    By March 2008, Plaintiff, who was temporarily held off work, was subject to

2    termination under the terms and conditions of his Collective Bargaining Agreement ("CBA")

3    governing Bayer's union employees.  (*See id.* at 12:7-14:15, Ex. 2, Art. VI, Section 8(i) at 15.)

4    On January 21, 2009, Dr. Chin wrote a letter regarding Plaintiff's status indicating that,

5    in apparent contradiction to his earlier assessment, he determined that Plaintiff could return to

6    regular unrestricted duties and perform the usual and customary duties of his employment.  (*See*

7    *id.* at 147:1-11, Ex. 26.)  Dr. Chin's letter also stated, however, that "Employee and Employer

8    are requested to exercise prudence and caution during this transition for full and unrestricted

9    duties.  [Plaintiff] may work without a wrist splint *at his discretion*."  (*See id.*, Ex. 26 (emphasis

10   added).)  Dr. Chin concluded that if Plaintiff "experience[s] any difficulties or discomfort

11   performing these duties, of should [Plaintiff] pose any risk of injury to herself [sic] or to others,

12   [Plaintiff] should be taken off of work immediately an[d] referred to Employee Health for

13   evaluation."  (*See id.*)

14   Bayer reviewed Dr. Chin's revised opinion ostensibly removing Plaintiff's permanent

15   restrictions and determined that it could not accommodate a restriction in the regulatory

16   framework forbidding the use of a wrist brace at Plaintiff's own discretion.  (*See* Willis Decl. at

17   ¶ 6.)  Bayer determined that it could not accommodate an employee who could, at his

18   discretion, effectively excuse himself from performing the majority of his job functions.  (*See*

19   *id.*)  Instead, although past the point at which Bayer could have terminated Plaintiff from

20   employment under the CBA, Bayer offered and Plaintiff accepted a position as a General

21   Worker, earning the same pay level, and guaranteeing him full-time work and benefits.  (*See*

22   Declaration of Bob Russey at ¶ 4.)

23   The Court will address the additional specific facts as required in the analysis.

24                                     **ANALYSIS**

25   **A.     Standards Applicable to Motions for Summary Judgment.**

26    A principal purpose of the summary judgment procedure is to identify and dispose of

27   factually unsupported claims.  *Celotex Corp. v. Cattret*, 477 U.S. 317, 323-24 (1986).

28   Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and

5

United States District Court

For the Northern District of California

1    admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

2    any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

3    Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the

4    evidence or make credibility determinations, and is required to draw all inferences in a light

5    most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.

6    1997).

7         The party moving for summary judgment bears the initial burden of identifying those

8    portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

9    issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is

10   sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v.

11   Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the

12   outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the

13   ultimate burden of persuasion at trial, that party must produce evidence which either negates an

14   essential element of the non-moving party's claims or that party must show that the non-moving

15   party does not have enough evidence of an essential element to carry its ultimate burden of

16   persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.

17   2000). Once the moving party meets its initial burden, the non-moving party must go beyond

18   the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine

19   issue for trial." Fed. R. Civ. P. 56(e).

20        In order to make this showing, the non-moving party must "identify with reasonable

21   particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,

22   1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact

23   must take care adequately to point a court to the evidence precluding summary judgment

24   because a court is "'not required to comb the record to find some reason to deny a motion for

25   summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th

26   Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418

27   (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary

28   judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**United States District Court**
For the Northern District of California

1    **B.      Claim for Disability Discrimination.**

2            Under the FEHA, it is unlawful employment practice for an employer to discharge an

3    individual from employment because of a physical disability.  Cal. Gov't Code § 12940(a).

4    Disability discrimination claims under the FEHA are evaluated using a "shifting burden"

5    analysis.  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 356 (2000).  First, the plaintiff must

6    establish a prima facie case of discrimination.  If the plaintiff cannot establish a prima facie

7    case, summary judgment for the employer is warranted.  If the plaintiff does establish a prima

8    facie case, the burden shift to the employer to articulate a legitimate, non-discriminatory reason

9    for the adverse employment action.  Once the defendant does so, the plaintiff may "attack the

10   employer's proffered reasons as pretexts for discriminatory motive."  *Id.*

11           To establish a prima facie case of disability discrimination under the FEHA, a plaintiff

12   must show that: (1) he suffers from a disability; (2) with or without reasonable accommodation,

13   he could perform the essential functions of the employment position held or desired; (3) he was

14   subjected to an adverse employment action; (4) the adverse employment action occurred under

15   circumstances raising an inference of discrimination.  *Id.* at 355.

16           At summary judgment, the degree of proof necessary to establish a prima facie case is

17   "minimal and does not even need to rise to the level of a preponderance of the evidence."

18   *Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir.2002) (quoting *Wallis v. J.R. Simplot Co.,* 26

19   F.3d 885, 889 (9th Cir. 1994)); *see also Caldwell v. Paramount Unified Sch. Dist.*, 41 Cal. App.

20   4th 189, 197 (1996) (holding that a plaintiff's evidentiary burden to establish a prima facie case

21   is "minimal").

22           Under the FEHA, an employer is not prohibited from refusing to hire or discharge an

23   employee with a physical or mental disability who is "unable to perform his or her essential

24   duties even with reasonable accommodations, or cannot perform those duties in a manner that

25   would not endanger his or her health or safety of the health or safety of others even with the

26   reasonable accommodation."  Cal. Gov't Code § 12940(a)(1).  In "disability discrimination

27   actions, the plaintiff has not shown the defendant has done anything wrong until the plaintiff

28

United States District Court

For the Northern District of California

1   can show he or she was able to do the job with or without reasonable accommodation." *Green*

2   *v. State of California*, 42 Cal. 4th 254, 265 (2007).

3          Here, Plaintiff is unable to establish a prima facie case of disability discrimination

4   because he cannot demonstrate that he is able to perform the essential duties of his position

5   without endangering himself or others.[1]  Even assuming, in the light most favorable to Plaintiff,

6   that the second assessment dated January 21, 2009 from Dr. Chin would allow him to perform

7   the functions of his job without a wrist brace, the recommendation is that he use his discretion

8   when electing whether or not to use a brace.  (*See* Schreibstein Decl., Ex. A, Ex. 26.)

9   According to the explicit SOPs under which all Bayer employees must function, the use of a

10  wrist brace poses a risk to the aseptic environment and an incremental risk to the patients using

11  Bayer's pharmaceutical products.  (*See, e.g.,* Willis Decl. at ¶ 6.)  Because the use of brace

12  would be at Plaintiff's discretion, Plaintiff cannot establish based on the evidence submitted that

13  he can function without the use of a wrist brace in the aseptic areas.

14         In this regard, Plaintiff contends that it is, or can be, safe to use a wrist brace in the clean

15  room environment.  However, Plaintiff's proffered expert's opinion that a wrist brace could be

16  used in the aseptic areas without posing a risk is inconsequential.[2]  In *Quinn v. City of Los*

17  *Angeles*, 84 Cal. App. 4th 472, 482-83 (2000), the court found that requiring that a police

18  officer pass a medical examination, including a hearing test, was within the discretion of the

19  employer.  The court found that the setting the parameters of an employee's qualifications is

20  "solely to be determined by the [employer] itself."  *Id.* at 482.  Likewise, in this matter, Bayer

21  has the authority, following the regulations governing the pharmaceutical industry, to set the

22  minimal requirements for its employees.  The Court finds here it is entirely within Bayer's

---

24         [1] Notwithstanding Plaintiff's attempt to create disputed fact about the precise
25  parameters of his former job's essential functions, there is no dispute, according to his own
    testimony, that the position required the repetitive use of both hands for pushing, pulling,
    lifting, and pinching forceps.  (*See* Schreibstein Decl., Ex. A at 77:5-78:3.)  Plaintiff testified
26  that the pain he felt in his right wrist and thumb were the result of flexing, grasping, pinching
    forceps, twisting clamps, pulling levers, and pushing and pulling carts on his own.  (*Id.* at
27  79:5-80:14.)

28         [2] The Court will not rule on the admissibility of the expert report as it is entirely
    irrelevant.

1  discretion to forbid the use of any wrist brace within the aseptic area in order to minimize the

2  possibility of contamination of their pharmaceutical product.

3     Without the use of a wrist brace at his discretion, Plaintiff is not able to demonstrate that

4  he could perform the essential functions of his employment position. *See Guz, Inc.*, 24 Cal. 4th

5  at 355.  Accordingly, Plaintiff cannot make out a prima facie case for employment

6  discrimination on the basis of disability.

7  **C.     Claim for Failure to Provide Reasonable Accommodations.**

8     Plaintiff's second claim for relief asserts that Bayer failed to reasonably accommodate

9  Plaintiff's physical disability.  Under the FEHA, it is an unlawful employment practice for an

10  employer to "fail to make reasonable accommodation for the known physical or mental

11  disability of an applicant or employee." Cal. Gov't Code § 12940(m).  A "reasonable

12  accommodation" includes "[j]ob restructuring, part-time or modified work schedules,

13  reassignment to a vacant position, acquisition or modification of equipment or devices,

14  adjustment or modifications of examinations, training materials or policies, the provision of

15  qualified readers or interpreters, and other accommodation for individuals with disabilities."

16  Cal. Gov't Code § 12926(n)(2).

17     An employer is not required to choose the best accommodation or the specific

18  accommodation that a disabled employee seeks. *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th

19  215, 228 (1999).  The FEHA only requires that the accommodation chosen be "reasonable."

20  Cal. Gov't Code § 12940(a), (m).  The obligation to reassign an employee who cannot

21  otherwise be accommodated "does not require creating a new job, moving another employee, or

22  violating another employee's rights under a collective bargaining agreement." *Hastings v.*

23  *Dept. of Corrections*, 110 Cal. App. 4th 963, 972 (2003) (citation omitted).  Furthermore, the

24  FEHA does not require that the employer create a new position for an employee, or a temporary

25  light-duty assignment where no such position existed previously. *Watkins v. Ameripride Servs.*,

26  375 F.3d 821, 828-29 (9th Cir. 2004); *see also Raine v. City of Burbank*, 1135 Cal. App. 4th

27  1215, 1227 (2006).  Finally, an employer is not required to eliminate "essential functions" of a

28  job, or reallocate them to other employees. *Wilmarth v. City of Santa Rosa*, 945 F. Supp. 1271,

*United States District Court*
For the Northern District of California

9

United States District Court

For the Northern District of California

1   1278 (N.D. Cal. 1996).  What is required is "the duty to reassign a disabled employee if an

2   already funded, vacant position at the same level exists."  *Hastings*, 110 Cal. App. 4th at 972-73

3   (citations omitted).

4          For the same reasons the Court has already found that Plaintiff cannot establish a

5   disability discrimination claim, he cannot prevail on a failure to provide reasonable

6   accommodation.  The Court has already found that Plaintiff was not able to demonstrate that he

7   could perform the essential functions of his former position and the SOPs, which was within the

8   discretion of Bayer, would not allow for the wearing of a supportive brace in the aseptic areas

9   of Plaintiff's former position.  The issue remains whether the less strenuous position at

10  comparable pay and benefits where his restrictions could be accommodated, constitutes a

11  reasonable accommodation.

12         There is no question of fact that Plaintiff was offered, and accepted, a position as a

13  General Worker, which requires fewer repetitive fine hand manipulations and is conducted in

14  non-aseptic areas.  In addition, although the new position is usually offered at a lower salary,

15  Bayer offered Plaintiff the position with the same pay rate as his former position and offered

16  full-time work and benefits after Plaintiff was eligible for termination per the maximum leave

17  provisions of the CBA.[3]  Bayer returned Plaintiff to a position entailing less risk of injury to

18  him, less risk of violation of the company's SOPs, and less risk to the patient community from

19  possible contamination of its pharmaceutical products.  The Court finds, under these undisputed

20  facts, that the offer constitutes a reasonable accommodation under the FEHA.  *See Hanson v.*

21  *Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 227 (1999) (holding that FEHA lists as reasonable

22  accommodations reassignment to a vacant and part-time or modified work schedule, even where

23  pay is less than 50 % of former pay without benefits).

24  **D.      Claim for Failure to Engage in Interactive Process.**

25         Under the FEHA, it is unlawful for an employer to "fail to engage in a timely, good faith

26  interactive process" with a disabled employee to determine effective reasonable

27  accommodations.  *See* Cal. Gov't Code § 12940(n).  In order to prevail on such a claim, the

28

---

[3] Plaintiff's arguments about the timing of the offer of employment is unavailing.

United States District Court
For the Northern District of California

1    employee must demonstrate that the employer had, but did not provide, a reasonable

2    accommodation that would have allowed the employee to perform the essential functions of his

3    position. *See Scotch v. Art Institute of California*, 173 Cal. App. 4th 986, 1019 (2009) (holding

4    that there can be no liability for failure to engage in the interactive process in an effort to

5    identify a reasonable accommodation when a reasonable accommodation was, in fact, provided

6    because in those circumstances a remedial injury was not suffered).  There is no dispute of

7    evidence that Plaintiff was offered, and accepted, a position that constitutes a reasonable

8    accommodation.  There is also no dispute of evidence that, according to Plaintiff's own

9    testimony and the findings of his treating physician, he was no longer qualified for his former

10   position.  The record is replete with evidence of Bayer engaging in a sufficient process to

11   determine the extent of Plaintiff's disability and the recourse for a reasonable accommodation

12   once the determination of disability had been made.  The Court finds there is no dispute of fact

13   tending to support a claim of failure to engage in interactive process.

14   **E.      Claim for Wrongful Termination in Violation of Public Policy.**

15          Plaintiff's fourth claim for relief alleges that Bayer wrongfully terminated him in

16   violation of public policy.  Under California law, an employee may maintain a cause of action

17   against his employer where the employer's discharge of the employer contravenes fundamental

18   public policy.  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 666 (1988).  A claim for

19   wrongful termination must be based on the policy established by a constitutional or statutory

20   provision.  *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1095 (1992).  Here, Plaintiff's wrongful

21   termination claim is derivative of his FEHA claim for discrimination.

22          However, claims for wrongful termination in violation of public policy do not

23   encompass other adverse employment actions shy of termination.  Plaintiff may not base a

24   wrongful termination in violation of public policy claim on discrimination alone.  *See Hall v.*

25   *Apartment Investment and Management Co.*, __ F. Supp. 2d __, 2008 WL 4415053, *4 (N.D.

26   Cal. Sept. 26, 2008).

27          In addition, at the hearing on this motion, Plaintiff agreed to abandon this claim

28   altogether.

11

**United States District Court**
For the Northern District of California

**F.      Claim for Punitive Damages.**

As the Court has found that Plaintiff was not discriminated against or deprived reasonable accommodation or a sufficient interactive process, the Court finds that Plaintiff cannot prevail on a claim for punitive damages.  A jury may award punitive damages only "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 713-14 (2009).  There is neither evidence of the underlying claims of discrimination, nor evidence of any malicious intent to discriminate.

<strong>CONCLUSION</strong>

For the foregoing reasons, Defendant Bayer's motion for summary judgment is GRANTED in full.  A separate judgment shall follow.  The Clerk is instructed to close the file.

**IT IS SO ORDERED.**

Dated:  September 7, 2010

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE